# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff*,

vs.

HAYKAZ MANSURYAN,

    *Defendant.*

Case No.10-10060-03-EFM

## MEMORANDUM AND ORDER

Now before the Court is Defendant Haykaz Mansuryan's Motion to Revoke Detention Order and to Withdraw Document #48 (Doc. 59). On June 21, 2010, the Court heard oral arguments on this motion. After hearing the parties' arguments, the Court took the matter under advisement. The Court is now prepared to rule: Defendant's motion is denied in part and granted in part. The motion is denied in so far as it asks the Court to revoke the magistrate's detention order, but is granted in so far as it asks the Court to withdraw document #48.

### I. Background

Defendant, along with three others, has been charged with two counts. Count one charges that Defendant knowingly and with intent to defraud, possessed fifteen or more devices which were counterfeit, or were unauthorized, access devices, in violation of 18 U.S.C. § 1029(a)(3) and 18 U.S.C. § 2. Count two charges that Defendant did knowingly, and with intent

-1-

to defraud, have control or custody of, or possessed device making equipment, in violation of 18 U.S.C. § 1029(a)(4) and 18 U.S.C. § 2.

Believing that Defendant posed a serious risk of flight, the Government moved for detention. On April 14, 2010, Magistrate Judge Donald W. Bostwick conducted a detention hearing. After hearing the Government's and Defendant's arguments, Judge Bostwick ordered Defendant detained pending trial, finding that the Government had shown by the preponderance of the evidence that there is a serious risk that Defendant would flee if he was released. Following Judge Bostwick's ruling, on April 19, 2010, Defendant filed a motion for reconsideration of detention, arguing that new facts mandated release. Judge Bostwick denied this motion. Following this denial, Defendant filed, pursuant to 18 U.S.C. § 3145(b), a motion to revoke detention order.[1]

## II. Standard of Review

The district court's authority to review a magistrate's detention order derives from 18 U.S.C. § 3145(b). The district court's review of a magistrate judge's order of detention is *de novo*.[2] Although the court's review is *de novo*, it need not conduct a *de novo* evidentiary hearing.[3] The decision of whether to start from scratch or to "incorporate the record of the proceedings conducted by the magistrate judge" is left to the sound discretion of the court.[4] Regardless of which way it

---

[1] Defendant initially filed, pursuant to 18 U.S.C. § 3142(f), a motion for reconsideration. As noted above, Defendant has since asked the Court to withdraw this earlier motion.

[2] *See United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

[3] *See United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002).

[4] *United States v. Plakio*, 2001 WL 1167305, at *1 (D. Kan. Sept. 5, 2001).

elects to proceed, though, the district court must decide "both the facts and the propriety of detention anew without deference to the magistrate judge's findings."[5]

### III. Standards for Detention

Under the Bail Reform Act of 1984, the Court must order an accused's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."[6] "The government has the burden to show that no condition or combination of conditions would reasonably assure the accused's presence in later proceedings and/or the safety of other persons and the community."[7] Because risk of flight and danger to the community are "distinct statutory sources of authority to detain," the government only needs to prove one or the other in order to have the defendant detained.[8] The government must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or to the community by clear and convincing evidence.[9]

In determining whether the government has met its burden, the court considers the following four factors:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves . . . a controlled substance;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including-

---

[5]*United States v. Poole*, 2004 WL 1732306, at *1 (D. Kan. July 15, 2004) (citing *Lutz*, 207 F. Supp. 2d at 1251).

[6]18 U.S.C. § 3142(e).

[7]*United States v. Dozal*, 2009 WL 873011, at *2 (D. Kan. Mar. 27, 2009).

[8]*United States v. Daniels,* 772 F.2d 382, 383 (7th Cir.1985).

[9]*Cisneros,* 328 F.3d at 616. The Government has not argued that Defendant is a risk to the community.

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .[10]

## IV. ANALYSIS

After carefully considering both the evidence presented and the factors enunciated in 18 U.S.C. § 3142(g), the Court concludes that pretrial detention is warranted in this case. To be sure, certain factors, such as Defendant's strong familial ties to the Glendale, California area, and the fact that Defendant is not facing a particularly lengthy sentence if convicted, do weigh in favor of release. However, the Court finds that these factors are outweighed by those that support the conclusion that Defendant is a serious flight risk. Notably, Defendant is not a United States citizen. As a consequence, Defendant faces the very real possibility of being deported if he is convicted of the crimes he is charged with.[11] Furthermore, Defendant has exhibited a tendency not to comply with authority. While Defendant's tendency may not be as pronounced as some of the other defendants in this case, it nevertheless exists. For example, as proffered by the Government, Defendant made several misleading representations to Glendale California police officers while he was being investigated for alleged crimes committed in California.

---

[10] 18 U.S.C. § 3142(g).

[11] *See United States v. Diaz*, 2010 WL 840471, at *2 (D.N.H. Mar. 3, 2010) (stating the possibility of deportation creates a strong motivation not to appear in court).

In addition to these facts, the fact that Defendant's name is the one that appears on the signature line of both the rental agreement for the cars that the defendants were stopped in and the receipt for the hotel in California also troubles the Court. The Government suggests that this fact indicates that Defendant may be a significant organizer, potentially the "Number 2" in the organization. At this point, the Court is not persuaded by this argument. Rather, the Court suspects that this may merely show that Defendant, due to his young age (younger than the other defendants), is easily influenced by others to take actions he shouldn't. Due to this susceptibility, the Court believes that Defendant may have a difficult time complying with the rules placed on him if he were released.

Further militating against release is the fact that Defendant has failed to identify a suitable place for him to reside while out on release. Initially, Defendant proposed that he live with his parents and brother in the family's home in Glendale. However, after the Government proffered evidence that Defendant's brother appeared to be involved in similar criminal activities, Defendant suggested that he live with his Aunt Kathy Mansuryan. The Government proffered evidence that Defendant's aunt had a criminal conviction for fraud, which although not recent was nonetheless somewhat concerning. At the hearing, Defendant suggested that these concerns could be addressed by releasing him to live with his parents, and have his brother live with their aunt. While the Court finds this final proposal intriguing, it still is less than satisfactory. As is obvious from the evidence presented thus far, Defendant's parents have not been successful in monitoring their young son's local and cross-country activities. Furthermore, due to the fact that Defendant's parents have limited English-speaking skills, the Court is not persuaded that Defendant's parents have the ability to prevent their son from being influenced by

others to violate the terms and conditions of his release. The bottom line is that the Court is not convinced that there is any environment to which Defendant could be released that has a sufficient indicia of success.

As a result, for the reasons stated above, the Court finds that detention is warranted in this case, and the Magistrate's Order of Detention is sustained.
Accordingly,

**IT IS THEREFORE ORDERED** that Defendant Haykaz Mansuryan's Motion to Revoke Detention Order and to Withdraw Document #48 (Doc. 59) is granted in part and denied in part as set forth above. The Order of Detention previously entered in this case remains in effect.

**IT IS FURTHER ORDERED** that Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility shall deliver the defendant to the United States marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

Dated this 22nd day of June, 2010, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE